Good morning, and may it please the Court. My name is Damian Blue. I represent the appellant, Joseph Simms. Mr. Simms is asking this Court to vacate his conviction for brandishing a firearm during and in relation to a crime of violence under 18 U.S. Code section 924C. Mr. Simms' 924C predicate offense, conspiracy to commit Hobbs Act robbery, is not categorically a crime of violence, and this is so because the 924C residual clause is void for vagueness in all applications following the Supreme Court's 2015 decision in United States v. Johnson. As this Court is aware, section 924C provides a mandatory consecutive minimum sentence, in this case 84 months, for a defendant who is convicted of brandishing a firearm in furtherance of a crime of violence, and 924C defines crime of violence two ways. The first is through a mechanism There's a circuit split on the question of whether the residual clause of 924C is vague, is there not? There is. Yes, Your Honor. And I saw recently that this circuit went in bank on this very question and then came down by an 11-4 vote, indicating that the residual clause of 924C was not vague. Your Honor is absolutely correct. There is a circuit split on this particular issue. Pardon me? There is a circuit split on this issue. That's if you include 16C. If you stick with just 924C, is there any court that has concluded it's unconstitutional? There's no court that's ruled that 924C is, but the precedent controlling 924C and 16B in this circuit essentially is interchangeable. In Henry Hubbard, this Court It's sort of a footnote and it's sort of an observation. My only point in making that, I'd grant you that there seems to be a split because the language is the same, but the function may not be the same. And I don't think we need to resolve that, but you need to have the courts ruling under 16B to conclude that there is a split. If you look at just 924C, in which the courts really haven't had trouble interpreting it over the years, the courts are unanimous in saying it's constitutional. And so I just wanted to keep that on the table because it's, I think we have to look closely at what Johnson was focusing at and the problems that Johnson had with ACCA. And my point would be for you to focus on the language differences between ACCA and this and the reasoning of the Supreme Court, particularly in how the Supreme Court used the example crimes in Johnson and distinguished the example crime language from crimes such as 924C. Certainly, Your Honor. And to touch upon the first issue, the focus Am I correct that there was an 11-4 vote holding that the residual clause of 924C was not vague? As I recall, yes, Your Honor, that is correct. That's a pretty heavy vote, isn't it? It is. The Supreme Court, however, recently granted certain the Lynch v. DiMaia case. Again, that is They've not set that for argument at this point. Not yet. And to your point, Your Honor, in focusing on the Johnson holding, the majority in that particular case held that there were two aspects of 924C that essentially made that particular statute unconstitutionally vague. And we believe that, excuse me, 924E under ACCA made that unconstitutional. We believe that 924C suffers from the exact same problems because the mode of analysis, the method that the court uses to evaluate whether a crime is a crime of violence under the residual clause is identical. It's not identical. First of all, even the language is distinctive. But what's really telling about Johnson is Justice Scalia's notion that the confusing list of examples did not enlighten the risk that was being addressed. I mean, he talked about, you know, the phrase shades of red standing alone does not generate confusion or unpredictability. Certainly. The phrase fire engine red, light pink, maroon, and so forth. Now his metaphor there is focusing on those four example crimes, which he said really caused the confusion. And he said with respect to other statutes that don't have those, he used the word they're not confusing. He used the word what? Not at all. Well, two points in response to that, Your Honor. First, when Justice Scalia gives that example using the colors, immediately after that the court talks about what is more important are those two features of the residual clause that conspire to make it unconstitutional. And those were the ordinary case approach, the ordinary case inquiry, where the court has to come up with a hypothetical. But I think the point Judge Niemeyer was making is that in the argument in Johnson, one of the arguments against the decision in Johnson was that it was going to throw into doubt all kinds of decisions that use any kind of risk language. And the courts in Johnson seemed to go out of its way to dispel that and to say, you know, not at all. And to point out the limiting features of the Johnson decision. So why shouldn't we take the Supreme Court at its word? I mean, I think that's what the Fifth Circuit was driving at. And if the Supreme Court's going to knock down all kinds of other provisions, then, you know, that's the Supreme Court's prerogative. But until that day arrives, I think we're obliged to take the Supreme Court at its word. They went out of their way to include some limiting language in that Johnson case. Well, to address the point that Your Honor raises, the difference with Johnson, or the similarity between Johnson and 924C, excuse me, ACCA and 924C, in Johnson where the government was concerned about this series of statutes that use grave risk, substantial risk, that risk in those statutes essentially was tied to real world conduct for the most part. In Johnson, the court was concerned that the risk assessment, the risk analysis, was tied to this series of hypotheticals. But you will grant that one of the things that was infirm about the residual clause of 924E, the ACCA thing, was trying to link up the substantial risk language with the list of examples that began the discussion of the residual clause. And the court says, we're having all kinds of trouble doing that. But you don't, that difficulty that the court kept repeating about linking up substantial risk analysis with burglary, arson, extortion, and everything, and whether they presented a risk and everything, that that interpretive difficulty is not present in the 924C residual clause context. To be clear, Johnson did look at the enumerated offenses, but the decision didn't turn on that. I think that's apparent on the text. You tried to make a distinction between the following phrase that Justice Scalia used in the opinion, but the following phrase was basically doing exactly what Judge Wilkinson was just pointing out. That is, when you conceive in the abstract the risk that Congress was after, you don't know what they're talking about. And Justice Scalia, earlier in the opinion or later, used examples as to the possibilities, which were absurd, so to speak. But he basically came back to say, when you have a statute which says substantial risk of injury in a real circumstance like 924C, carrying a gun in connection with a crime of violence, he said there's no problem with those. I think he was trying to cabin, or the court was trying to cabin Johnson to the peculiar circumstances of 924E. Well, two points of response to that, Your Honor. First, the ordinary case approach, again, is the central holding or the central problem that the Court raises in Johnson. But also in United States v. Welch, the Court comes back and it says that the problem that the Court expressed under Johnson essentially was the categorical approach as applied to the residual clause. And the fact is that — and they were concerned about just purely retroactivity in that case. But the substantive case, the underlying case on the merits, was the Johnson case itself. And I'm concerned about the proper role of this Court versus the Supreme Court and whether we ought to try to march out in front of the Supreme Court and striking down this and that and this, or whether we ought to, I think, take the Supreme Court at its word about that list of examples. And also, the other difficulty that the Johnson Court ran into was that it was required to hypothesize abstract cases or cases in the abstract in order to discern risk, whereas the residual clause inquiry under 924C is more concrete, is it not, because it talks about risk in the course of committing the offense. Well, in United States v. Fuertes, this Court adopted the categorical approach as applied to 924C cases. And as a part of that, under the ordinary case inquiry, we're stuck with the same problem of the hypothetical. Again, this is the problem of using a judicially — But it's not just the use of hypothetical. It's use of hypothetical in the face of crimes where you can't draw an abstract principle because they're all over. The Court said, does ordinary burglary involve an occupied home by night or an unoccupied home by day? So the question is, what's the risk being addressed? Or the typical extortionist threatens his victim in person with the use of force or by mail with the revelation of embarrassing personal information. Those risks are totally different. And the Court says, we can't figure out what risk they're focusing on. Whereas, when you just use the simple case of substantial risk in connection with identified conduct, the courts have never had any problem. The Supreme Court in Johnson pointed out the fluctuations that the Court had taken over the years in having trouble in deciding what this act of provision meant. Whereas, there has been no problem by the courts across the country in identifying the risk envisioned in 924C. And I think that's a big deal, isn't it? Well, again, I would continue, Your Honor, that the — again, in terms of the measure of risk, first, under the categorical approach in the ordinary case inquiry, again, which controls 924C cases, first, the mode of — I say that the mode of analysis is the same because if we apply that to 924C, the Court still has to come up with what the ordinary case of an offense is. That is inherent in the 924C language that uses by its nature. And again, in Fuertes and Naughton, this Court adopted the categorical approach in the ordinary case inquiry. And again, to the extent the Court has concerns about the enumerated offenses, we would contend that the Johnson opinion says that the enumerated offenses add to the problem. Scalia used — Justice Scalia used words such as what is more, more over. But the fundamental problem the Court's concerned about, again, is this ordinary case inquiry. In 924C, once again, the issue is that although there is a concern about risk, the risk is tethered, again, to — not to the real-world facts of the case. Under the categorical approach, the Court doesn't look to the real-world facts of the case. Well, we wouldn't — we wouldn't have to with respect to the Hobbs Act thing and applying the categorical approach. The section 1951, the Hobbs Act, is replete with references to physical violence. This is whoever in any way, in any degree, obstructs, delays, or affects commerce or commits or threatens physical violence to any person or property. And then they go and talk about the definition of robbery. In the definitional section of the Hobbs Act, they talk about unlawful taking of property against someone's will by means of actual or threatened force or violence or fear of injury. Now, the government says we're not going to rely on the force clause on 924C, but the residual clause works here because the Hobbs Act offense is defined by actual or threatened physical violence. And so, you know, I'm just following the categorical approach. This would seem to me to be a classic example of physical violence because the language of physical violence is used throughout the Hobbs Act. Your Honor, my time has expired. Can I answer the question? You want to reserve this for rebuttal then? I'm happy to do that, Your Honor. I've got a direct answer now. Pardon me? I've got a direct answer to the question now. I'm happy to address it now if the Court would allow it. If you feel more comfortable giving the answer now, I'm happy to have you do it. Okay. I think that in Johnson, the Court addressed this specific concern. And in the majority opinion, Justice Scalia writes that, surely there may be some cases that may be a close call. He gives the example of the statute that the Court struck prohibiting grocers from essentially charging excessive fees. And the Court gives the analogy, certainly, charging $1,000 for a pound of sugar is excessive. But that doesn't mean that the Court's without the power to hold that that particular statute is void in all applications. And so applying or saying that perhaps because Hobbs Act conspiracy to commit Hobbs Act robbery may arguably fall under the residual clause still doesn't divorce the problem or resolve the problems of the ordinary case approach or the ordinary case inquiry that's part of the categorical approach. I feel like I've taken up a lot of your time with questions. Is there any further comments you want to make? Because we took up a lot of your time with questions. Not at this time. I'll reserve the rest of it. I'd like you to think about when you come back is whether you think it's significant, the differences in language between ACCA and 924C. Certainly. The language is slightly different. The actual language of the threat of force language. And I think I understood you earlier in your argument that they're basically the same. And I'd like to explore that with you when you come back. Sure. Well, thank you. Mr. Rubin. Good morning. May it please the Court. Philip Rubin on behalf of the United States. I would like to start with what Judge Niemeyer, you just asked my colleague, about the textual differences between these statutes. And I think the Court has highlighted several of them already this morning. And I think they are significant. And I see at least five textual and contextual differences that make this completely unlike ACCA's residual clause. The first one is something the Court mentioned, that it's limited to force being used in the course of the offense. And this was something that the courts that have looked at this so far have highlighted about ACCA. There was really no end. It could be events that spin out from the crime itself. Whereas 16B and 924C's text expressly limits it to force that is used in the course of the offense. Moreover, it's force. ACCA's residual clause only looks to physical injury, which is broad. Physical injury could be caused any number of ways. Here, and this Court has clarified, the defendant, the risk is of the defendant using force in the commission of the offense, which ties it much more closely to the elements of the crime in question. And that is a very different ordinary case approach. If it's even really an ordinary case approach at all, it's a very different one than the inquiry. The bottom line on all these things is whether it is vague under the Constitution. And one of the manifestations of vagueness is whether the courts had problems over the years and come out with different results trying to construe the language. And under ACCA, they were all over the park. And under 924C, I haven't discerned any problem by any court. I agree with that, Your Honor. In fact, ACCA, I don't know of any other topic that has brought five Supreme Court decisions in nine years on the exact same text. Five. Meanwhile, 16B and 924C together have spawned one United States Supreme Court opinion on the interpretation of that language, lea cal, which was unanimous. This has not caused anywhere near the amount of confusion. It hasn't caused confusion at all. In fact, lea cal demonstrates this. If I would compare the lea cal decision about 16B, which was DUI involving injury, with the Begay decision, which was also about DUI in a different state, lea cal was a 9-0 decision that said 16B did not apply to that DUI statute. Begay split the Supreme Court three ways on whether a DUI statute qualified under ACCA's residual clause. It required the Supreme Court to create a new test. This was the purposeful, violent, and aggressive test. That didn't last very long before the court found that that test wouldn't work. In lea cal, they didn't need to make a test because the text is done. But there was this history that was just strewn with wanderings back and forth and trying to get a, and there's no comparable history with respect to 924C. There's no, there's just no huge struggle. Nothing whatsoever, Your Honor. And I think that owes to these differences in the text that we've been talking about. This text is simply easier for courts to apply and it's easier for citizens to understand. And those are the inquiries of vagueness. My point is, I think the heart of this case is the relationship between a court of appeals and the Supreme Court, particularly where you're talking about striking down this and that as unconstitutional with all kinds of implications for all kinds of statutes, for all kinds of cases. It seems to me when you get in this kind of area, where the effects of your actions in striking down these things are going to be hugely and broadly felt, that we should not be out in front in an aggressive posture of the Supreme Court. And we should wait. And if the Supreme Court says we have trouble understanding it, we have trouble, which I doubt they're going to say. But then that's fine because, you know, they're the highest court. But there's something that I worry about being in an unseemly posture, just going in and trying to knock these things down. I don't think I can say it any better than Your Honor said it. And I would, other than to say I agree, and I think there's two concerns that you highlighted. It's the relationship between courts of appeals and the Supreme Court, as well as the relationship between the judiciary and Congress. I'm reminded of Justice Holmes saying that striking an act of Congress as unconstitutional is the gravest and most delicate duty a court may perform. I take that to mean that striking an act of Congress as unconstitutional is a last resort. It's not a first one. And that's where you get that sense of it in this recent Fifth Circuit decision. I mean, there have been some, you know, some panels of different circuits going different ways. But then you get an in-bank court and they focus on that question. And you get an 11-4 vote saying that this is not vet. And that's a pretty, you know, that's an institutional vote from a lot of judges in a lot of different places. And it seems to me that it carries considerable weight. I think that's right. And I would add one thing to that, Your Honor, also. I don't know how much to take from it, but the Fifth Circuit actually took that case en banc sua sponte. And that must be how important they considered it to be to make that statement. It was 11-4. And that was, like you said, it wasn't close. And beyond that, as we've talked about, all three courts to consider 924C3B specifically have rejected the argument that my colleague is making today. And I think for good reason. And I know the court is well aware of these differences, and so I don't want to take more time than is necessary. But I would like to highlight a couple more things that are different between them. This is one that is even different between 16B and 924C, which is the context. This, of course, 924C is a federal crime. It's not a sentencing enhancement. And more than that, it is limited to federal crimes of violence. And if you think about it, part of the difficulty, even under ACCA, is that there's this wide constellation of state crimes. And they might look the same, but then you have to dig through state law to find out they're not the same. You don't look at state crimes for 924C3B. So when we're applying 924C3B, we have a limited use of federal crimes. And this court and its sister courts have already made a great deal of progress on answering the questions about which crimes count and which crimes don't. For example, we know after Fuertes that sex trafficking by forced fraud or coercion is out. We know after McNeil that bank robbery is in. The Sentencing Commission informs us that of 924C cases, 40% were drug trafficking, so they're not even about this definition at all. Of the remainder, over half are robbery cases. And so that means when this court continues to work through these cases, also we will have dead certainty on the application of offenses under this language. I think the language is clear already. I think 16B should survive on its own. But this language in this context is even clearer than 16B. And I think that's something that's worth noting when we're talking about making sure not to get out ahead of the Supreme Court. If the Supreme Court had wanted to invalidate the entire ordinary case approach, anything that looks like Acker's Residual Clause at all, they could have done it and it would have been an opinion that would have been about half as long. But instead, as the Court has highlighted this morning, the Court took pains to identify these specific problems, the enumerated offenses that were talked about earlier. I would contend that they were central to the holding. And part of that requires looking back. Johnson, as I said, it's really a line of five cases. And if you look back at the previous four, they're all centered on trying to understand what these enumerated offenses mean. The Second Circuit in Hill, when it affirmed... I guess one of the things you've been driving at is that you attach some significance to the fact that the ACCA was a recidivist statute and it dealt with predicate state convictions. And predicate state convictions, they're all over the lot. They are. But, you know, with 924C, you're dealing with a more limited universe because you're talking about the instant offense and crime of violence in connection, brandishing crime of violence in connection with the instant offense. And your point is that's likely to be a federal crime. It must be a federal crime. It must be a federal crime. So you don't have the problem, as you do with the ACCA, of interpreting all kinds of predicate state offenses because the way this 924C is framed, it's not only not a predicate offense statute, it's an instant offense statute. And crime of violence, you're not going to be bringing a state crime in federal court. It's going to be the predicate crime for the instant offense is going to be a federal offense. So it's a much more limited universe. It's just as different as night and day. I agree with that. I think that's exactly right. It's such a narrower set of offenses. And I do want to make clear, even if that weren't the case, if I were up here arguing 16B, I would maintain for all the other textual reasons it is also not vague. But even setting 16B aside, 924C is even less subject to this argument of vagueness than 16B would be, and I think 16B should be fine. The other thing, to talk about these enumerated offenses, I really would commend to the court the Second Circuit's opinion in Hill and the way that it looked at how the entire stream of five cases relied on it. The Second Circuit said that, as Johnson, too, suggested, the enumerated offenses were, quote, the prime cause of uncertainty in that provision and the key obstacle in consistent judicial construction. Judge Niemeyer, you read the quote from Justice Scalia about shades of red. This is one where he said shades of red standing alone does not generate confusion. This is that because there are no enumerated offenses in 924C. They are left out. And so instead of trying to compare how risky a robbery or a burglary is versus an arson versus extortion, we're left with a much more clear shades of red phrase that is textually unlike ACCA's residual clause. And going back to these themes of federalism and deference to the Supreme Court, if the Supreme Court had wanted to make a broader statement, I don't think they would have taken all of the care to review each of these very important details of ACCA's residual clause in history. In Johnson, they would have said, we find this whole approach to be unacceptable. They didn't do that in Johnson, and I think that matters. The Supreme Court even went so far that shades of red quote, which was actually Justice Scalia quoting his dissent in James, was in response to- One question. Your brief didn't respond to appellant's argument that conspiracy to commit Hobbs Act is not a crime of violence under 924C3A. Are you conceding that? We're not arguing that the conspiracy. Now, substantive Hobbs Act robbery does qualify, in our view, under 924C3A. You think conspiracy to commit Hobbs Act robbery, are you conceding that that's not a crime of violence? Yes, Your Honor. Under C3A. We are arguing it under C3B because C3A requires that it have as an element, in order to complete that offense, it has as an element the use of physical force against the person of another. This Court has always analyzed the conspiracy offenses under 924C3B or its analog in 16B. So as I understand it, to follow up on my colleague's question, you're conceding it under the force clause. Only the force clause. Only, but not under the residual clause. That's right. And I would maintain that substantive Hobbs Act robbery, the crime itself, qualifies under the force clause. And that's why we think it makes for an easy residual clause question, because this Court and other courts have observed generally that conspiring to commit a crime of violence carries with it the very real risk that you will do what you're conspiring to do. That's exactly the point of a conspiracy, particularly when you take into account that you must take a substantial step. I think it's a good question because I feel like the force clause is a much harder, is a harder challenge as between the two. I think the residual clause is much the easier case. I think that's right, and I don't think the Court would have to even reach 924C3A in this case if it resolves the constitutional question. But we're not arguing it because the conspiracy crime, the elements of the conspiracy, involve the agreement and a substantial step. And that is what the Court would have to look at under the force clause itself. And as I read this Court's precedents, and I'm specifically – then you lose because you conceded on the first – on the force clause. Well, certainly – At least from my perspective. I certainly – Your Honor, if you disagree and you think that we're wrong to concede under the force clause, I think – obviously I think it's most important to get the right answer, even if the government got the wrong answer. But I'm reminded of the Court's precedents in cases like Ayala, which talked about RICO conspiracies, for example, and said that's a 924C3B kind of crime. In the ACCA context, in the White decision – this was back before Johnson – the Court said that North Carolina conspiracy to commit robbery with a dangerous weapon, which is a pretty close analog to what we're talking about here on the state level, that's a residual clause type of issue. And the force clauses are very similar between those provisions. And so I think it is most consistent both with this Court's case law and as I've surveyed the circuits that conspiracy to commit a crime of violence is a 924C3B offense. The other aspect that I would address very briefly is just to end on the idea that Johnson came after what the Supreme Court called repeated attempts and repeated failures to craft a principle and objective standard out of ACCA's residual clause. As we've discussed this morning, there's no such history here. There's no such history of any kinds of problems with the residual clause of 924C. And so to strike it would be to get out ahead of the Supreme Court, where I think striking an act of Congress is such a grave act and that the acts of Congress are afforded such a presumption of constitutionality that I think the right decision in this case would be to uphold the constitutionality of 924C3B. If the Court has any questions on the aspect of this, I would be pleased to answer them. Paul, do you have any? Stephanie, do you have any? No. Thank you very much. Counsel, you have some rebuttal time. Thank you, Your Honor. I do want to first address the question about the textual differences between the statutes. Admittedly, there are textual differences between the two, but I get back to the central point of our argument, which is that the method of analysis, again, remains the same. And I say that because under the categorical approach in the ordinary case inquiry, which this Court adopted and applied in the Fuertes case, the Court still would be required to determine what the ordinary case of any offense to which you would want to apply 924C. It seems to be by linguistically. ACCA says potential risk of physical injury to another, physical injury to another. It doesn't even talk about elements of the crime. It really talks about whether those elements could involve injury or not in the context of four statutes, which it's hard to link up, whereas 924C talks about what it involves, what it doesn't involve. It involves in the course of committing the offense, the potential risk in course of committing this offense in this case, which is the Hobbs Act case. And I think that class of cases, even with a categorical look at the case, is a much narrower case. And proof of the pudding is the courts haven't had difficulty, whereas under ACCA, the courts did have a lot of difficulty. And I think it may be attributable to the linguistics alone of the two different, of the two statutes. And that's precisely why I again would cite to the court the body of precedent interpreting 924C used in this circuit is the same as 16B. So to the extent there hasn't been specific litigation about 924C, we would contend that it's all subsumed by the litigation in 16B cases. And again, there's a 16B case. 16B has not really presented troubles until Johnson. And the problem there was a couple of circuits. Basically, we're construing Johnson to reach 16B, and there is a split on that. But we don't need to discuss whether 16B, which is used in other contexts, you know, it's used in the immigration context, which is civil. It can be used in a criminal context. It could be used in a sentencing. Well, no longer in sentencing, but it used to be used in sentencing. Whereas 924C is what's before us. And the courts have been unanimous on that statute. And I must say the linguistic differences seem to advance the notion that it's easier to apply 924C than it is to apply ACCA. And I certainly take the point. And even though it may be easier to apply, I would still contend that under the same method of analysis, even though it may very well be easier to apply, it still suffers from the same vagueness that ‑‑ If it's easier to apply, that starts telling us a lot about whether it's vague. Well, just because it's easier to apply doesn't necessarily mean that it's still not unconstitutionally vague because it suffers from, again, I would argue the exact same problems that the Court recognized in the Johnson case. How do you know it suffers from those problems? The evidence is whether people can understand it and apply it. Unconstitutionally vague is sort of a notice notion in our law that people know what they're going to be violating and know how to construe it. These aren't formulas. These are concepts that we're trying to decide whether this law has caused difficulty in the community because it is so vague we don't understand what it means. And there's ‑‑ I don't see the evidence of that conclusion. It's easy to argue it's unconstitutionally vague. In Johnson, the Court spent all its time talking about how they had difficulty applying it and how courts had difficulty applying it. They couldn't come to a meaning that was consistent, and they kept fluctuating. On this one, we don't have that history. So the real question is if you say it's unconstitutionally vague, you really have to point to something that shows that people speaking the English language and interpreting it in courts of law have had difficulty with this. And I don't think there's much there. And perhaps my only and best response to that, Your Honor, would be the confusion surrounding 16B, but I recognize that that confusion follows the court's opinion in Johnson. You know, 16B is a derivative argument for you, and if we can't find vagueness under 924C, we leave 16B for another day. There are additional arguments they have to consider under 16B. It's a definitional provision, so it's going to be used in context somewhere. And it seems to me we would have to evaluate it in the context of where it's being used, don't you think? We are, I'd argue that the context, again, for 924C, again, I continue to go back to the problem of the categorical approach and the ordinary case inquiry in the context of 924C. Caused a problem? In 16B cases. No, in 924C. There's no circuit split on 924C cases. No circuit has. Set aside circuit split. I know there's no circuit split. But have the courts had problem in applying 924C? Not to my knowledge, Your Honor. Well, that's pretty powerful information, isn't it? Okay. Thank you. Thank you. Counsel, I see you're court appointed, and I want to extend the appreciation of the court for your services and the quality of your representation. Thank you, Your Honor. Thank you. We'd like to come down and greet counsel, and then we'll move directly into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Stephanie D. Thacker